**Allegra D. HEMPHILL,**
**Plaintiff–Appellant,**

v.

**MCNEIL–PPC, INC., Defendant–**
**Appellee.**

No. 01–1391.

United States Court of Appeals,
Federal Circuit.

Nov. 27, 2001.

Rehearing Denied Dec. 21, 2001.

Before CLEVENGER, GAJARSA, and DYK, Circuit Judges.

DYK, Circuit Judge.

Allegra Hemphill ("Hemphill") appeals the decision of the United States District Court for the District of Maryland granting McNeil–PPC Inc.'s ("McNeil") motion for summary judgment that McNeil's sanitary napkin products do not infringe Hemphill's U.S. Patent No. 4,557,720 (the "720 patent"). *Hemphill v. McNeil–PPC, Inc.*, 134 F.Supp.2d 719 (D.Md.2001). Because the district court properly construed the asserted claim of the '720 patent and properly determined that McNeil's sanitary napkin products do not infringe that claim as a matter of law, we *affirm.*

### BACKGROUND

Hemphill is the inventor and patentee of the '720 patent, which relates to a "Vaginal

Applicator." The patent describes a disposable vaginal swab or refresher meant either to cleanse or to treat the vaginal area with fragrances, medications, germicides, or deodorants. Col. 1, II. 34–38. The '720 patent has two independent claims, but only claim 2 is at issue on appeal. Claim 2 of the '720 patent reads as follows:

> 2. A vaginal swab comprising an outer housing including an inner case member and an outer case member at least part of which is connected to and overlies said inner case member;
>
> a core member, at least one layer of a porous material secured to said core member, and housing means for supporting and enclosing said core member, said core member being secured to said housing means, having at least two portions movable relative to one another between first and second positions for enclosing said core member when in said first position and for both exposing said core member and the said porous padding secured thereto and for forming a handle for said swab when in said second position.

'720 patent, col. 7, I. 6—col. 8, I. 10.

McNeil manufactures and sells several families of sanitary napkin products, including Stayfree sanitary napkins, Carefree sanitary napkins, and Serenity adult napkins. For purposes of determining infringement, McNeil's Stayfree, Carefree, and Serenity products (the "Accused Products") are nearly identical in design. *Hemphill,* 134 F.Supp.2d at 723. The following description of the Accused Products is undisputed:

> The Accused [Products] are sold in multiple units in large plastic bags, inside of which are individual napkins packaged in plastic wrappers. Each of these individual units is composed of absorbent material with a flexible thin porous membrane that is attached on one side to a flexible plastic sheet that has an adhesive on the other side. In its packaging, the side of the plastic sheet containing the adhesive is attached to a thin paper sheet. In order to use the napkin, the consumer removes the plastic packaging, and peels off the thin paper sheet. Then, the consumer presses the side with the adhesive to the undergarment in order to attach the napkin to the undergarment. The napkin is intended to passively collect fluid during use. After use, the consumer pulls on the napkin to peel it off of the undergarment, and then discards it, either directly or by first inserting the napkin into the plastic wrapper of the next napkin. *The Accused [Products] are not designed to be used or placed internally in the vagina. They do not have handles, and do not have adsorbent material.*

*Id.* at 723–34 (emphasis added) (citations omitted).

Hemphill sued McNeil in the United States District Court for the District of Maryland, alleging that several families of McNeil's sanitary napkin product lines infringe the '720 patent. McNeil moved for summary judgment of noninfringement at the close of discovery.

The district court first construed claim 2 of the '720 patent. Looking to the intrinsic evidence, the district court construed the claim language in light of the specification and prosecution history. *Hemphill,* 134 F.Supp.2d at 725–27. For example, the district court found that during the prosecution phase, Hemphill narrowed her claims to distinguish her invention from prior art, and further limited the scope of her invention during two reexamination proceedings. *Id.* at 721–22. On the basis of this intrinsic evidence, the district court interpreted claim 2 to require a "vaginal swab" to be used within the vaginal canal and to be comprised of four component

parts: (1) an outer housing; (2) a core member; (3) at least one layer of porous material; and (4) a housing means. *Id.* at 726.

The district court then compared claim 2 as construed to the Accused Products, and concluded that the Accused Products, as a matter of law, did not infringe the '720 patent. *Id.* at 729. As for literal infringement, the district court found that "the structure of [Hemphill's] invention differs vastly from the accused devices on each element." *Id.* at 728. As for infringement under the doctrine of equivalents, the district court found that Hemphill "failed to offer a single assertion illustrating that the difference between the elements of her invention and the accused devices is only insubstantial. Rather, the evidence establishes [that] the difference is vast." *Id.* at 729.

Accordingly, the district court granted McNeil's motion for summary judgment of noninfringement. Hemphill then filed a Motion for Reconsideration pursuant to District of Maryland Local Rule 105.10 and Federal Rule of Civil Procedure 60 seeking reconsideration of the entry of summary judgment. The district court treated her motion as a Rule 59(e) Motion to Alter or Amend Judgment, and denied the motion.

Hemphill filed a timely *pro se* appeal. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

### I. *Claim Construction*

Hemphill argues that the district court improperly construed claim 2 by "reading into" claim 2 "extraneous limitations from the specification," and by reading limitations into claim 2 that relate to claim 1. McNeil responds that the district court properly looked to the specification and prosecution history to construe claim 2. We agree.

In interpreting claims, a court "should look first to the intrinsic evidence of record, *i.e.* the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582, 39 USPQ2d 1573, 1576 (Fed.Cir.1996). It is well-settled that for purposes of claim construction, the specification may act as a sort of dictionary that explains the invention and may define terms used in the claims. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979, 34 USPQ2d 1321, 1330 (Fed.Cir.1995) (en banc), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). When the meaning of a term used in a claim is sufficiently clear from its definition in the specification, that meaning shall apply. *Multiform Desiccants, Inc. v. Medzam, Ltd.,* 133 F.3d 1473, 1477, 45 USPQ2d 1429, 1432 (Fed.Cir.1998). In this case, the district court properly looked to the specification for clarification of several terms which were not wholly defined in the claim language.

Similarly, the district court properly looked to the prosecution history of the '720 patent. Hemphill argues that "the district court construe[d] the wrong ... claim" by reading into claim 2 limitations relating to claim 1. But even where the prosecution history does not relate to the particular claim at issue, it is proper for the district court to use that prosecution history to construe the claim at issue if the prosecution history relates to the same structure as the asserted claim. *Alpex Computer Corp. v. Nintendo Co.,* 102 F.3d 1214, 1220, 40 USPQ2d 1667, 1672 (Fed.Cir.1996) ("[W]e discern no reason why prosecution history relating to the structure of ... claim 1 is not pertinent to the same structure ... [in] claims 12 and 13."). It is well-settled that "[p]rosecution history is relevant not only for purposes of prosecution history estoppel but also for

construing the meaning and scope of the claims." *Id.* at 1220, 102 F.3d 1214, 40 USPQ2d at 1671. Thus, like the specification, the prosecution history can act like a dictionary, *Hoechst Celanese Corp. v. BP Chems. Ltd.,* 78 F.3d 1575, 1578, 38 USPQ2d 1126, 1129 (Fed.Cir.1996), *cert. denied,* 519 U.S. 911, 117 S.Ct. 275, 136 L.Ed.2d 198 (1996), and statements made during reexamination proceedings "are relevant prosecution history when interpreting claims." *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.,* 849 F.2d 1430, 1439, 7 USPQ2d 1129, 1136 (Fed.Cir. 1988), *cert. denied,* 488 U.S. 986, 109 S.Ct. 542, 102 L.Ed.2d 572 (1988). In this case, in construing claim 2, the district court relied on statements Hemphill made during prosecution of the '720 patent in which she narrowed her claims to overcome prior art. The district court also relied on Hemphill's statements, described below, that she made during two reexamination proceedings in which she further limited her claims to convince the PTO to reissue them. The district court property relied on Hemphill's statements made during prosecution and during the reexamination proceedings, even though some of those statements related to the unasserted claim 1.

■ The district court construed the term "swab" to mean "a small piece of absorbent material attached to the end of a stick or wire and used for cleansing or applying medicine." *Hemphill,* 134 F.Supp.2d at 727 (quoting *American Heritage Dictionary* 1810 (3d ed.1992)). Hemphill argues that the term "vaginal" does not limit her invention to a swab meant for use inside the vaginal cavity, but instead "pertains to the outer housing as a cover or a sheath." We agree with the district court. After determining that claim 2 "provides little guidance as to the terms 'vaginal' and 'swab,'" the district court found that the "specification clarifies that [Hemphill] designed the 'vaginal swab' to enter into the vaginal cavity," and that the "specification defines the purpose of the invention as 'a truly portable, convenient, and disposable internal vaginal cleaning device or refresher.'" *Id.* at 726. Thus, the district court found that the specification limits the term "vaginal" to a "swab entering into the vaginal canal." *Id.* The district court also found that Hemphill distinguished her invention from prior art during prosecution by stating that the prior art lacked "an elongated structure for the swabbing element to be introduced into the vaginal cavity." *Id.* The district court accordingly precluded Hemphill from "claim[ing] that her invention is not meant to enter into the vaginal cavity," and construed the term "vaginal" to mean "a swab entering into the vaginal canal." *Id.*

■ Finally, the district court relied on the following dictionary definitions to determine the plain meaning of the term "swab": *American Heritage Dictionary* 1810 (3d ed.1992) (defining "swab" as "[a] small piece of absorbent material attached to the end of a stick or wire and used for cleansing or applying medicine"); *Dorland's Medical Dictionary* 1617 (28th ed.1994) (defining "swab" as "a wad of cotton or other absorbent material firmly attached to the end of a wire or stick, used for applying medication, removing material, collecting bacteriological material, etc."). The fact that the PTO granted Hemphill's request for reexamination in light of a patent for wrapped sanitary napkins (U.S. Patent No. 3,973,567) (the "Srinivasan" patent) and reissued her patent over Srinivasan does not alter the proper construction of the term "vaginal swab," and does not persuade us to construe the term "vaginal swab" to cover wrapped sanitary napkins. We find that the district court properly construed the term "vaginal swab."

■ Next, the district court construed the term "outer housing" to require an outer housing that "functions as a handle for the use of the swab," and is "not designed to be removed and thrown away." *Hemphill,* 134 F.Supp.2d at 727. Specifically, the district court found that during prosecution of the '720 patent, Hemphill distinguished her invention from U.S. Patent No. 2,393,677 (the '677 patent), noting that her "outer housing" transformed into a "handle structure," a metamorphosis absent from the invention of the '677 patent. *Id.* We find that the district court properly construed the term "outer housing."

■ The district court then construed the term "core member" to require "a fairly rigid core member with an annular band or ring at its base that can fit into the band or ring of the outer housing." *Id.* The district court looked to Hemphill's statements during prosecution of the '720 patent to determine that the purpose of the "annular band" is "to keep sticky fingers off the fibers," and to possess "an outer diameter which is at least equal to the inner diameter" of the band attached to the outer housing, "so that the two can fit thereby allowing the core to be secured within the band by a suitable adhesive." *Id.* The specification described the core member as "fairly rigid," and secured to the outer housing. *Id.* We find that the district court properly construed the term "core member."

We agree with McNeil that the district court properly construed all terms of claim 2, as a matter of law.

## II. *Infringement*

Hemphill's *pro se* appeal implicitly challenges the district court's grant of summary judgment of noninfringement. To prove literal infringement, Hemphill must establish that the Accused Products contain each and every limitation of the asserted claim. *See, e.g., Maxwell v. J. Bak-*er, *Inc.,* 86 F.3d 1098, 1105, 39 USPQ2d 1001, 1004 (Fed.Cir.1996), *cert. denied,* 520 U.S. 1115, 117 S.Ct. 1244, 137 L.Ed.2d 327 (1997). Hemphill's sole discernible argument regarding infringement is based on an advertisement describing certain features of the Accused Products. *Hemphill,* 134 F.Supp.2d at 728. After comparing claim 2 to the Accused Products, the district court found that the limitations in claim 2 were not satisfied by the Accused Products.

■ First, as noted above, the district court found that the term "vaginal swab" limited the invention to "a small piece of absorbent material attached to the end of a stick or wire and used for cleansing or applying medicine," and meant to be used inside the vaginal canal. *Id.* at 727. The district court found that the Accused Products are not designed for use within the vaginal canal, and that a sanitary napkin is neither the size nor the shape to allow for internal use. *Id.* at 728.

Second, as noted above, the district court found that the term "outer housing" limited the invention to a swab with a housing that "functions as a handle for the use of the swab," and is "not designed to be removed and thrown away." *Id.* at 727. The district court found that the Accused Products lack an outer housing as required by the '720 patent, and instead have an "outer wrapping that is discarded once the sanitary napkin is utilized." *Id.* at 728.

Finally, as noted above, the district court found that the term "core member" required a "fairly rigid core member with an annular band or ring at its base that can fit into the band or ring of the outer housing." *Id.* at 727. The district court found that the Accused Products lack both a rigid core and an annular band. *Id.* at 728.

We agree with the district court that no reasonable jury could find that these limi-

tations recited in claim 2 are found in the Accused Products.

To prove infringement under the doctrine of equivalents, Hemphill must show "equivalence" between the elements of the Accused Products and the claimed elements of the '720 patent, *Warner–Jenkinson, Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 21, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997), by showing that the Accused Products "perform[ ] substantially the same function in substantially the same way to obtain the same result" as the claimed elements of the '720 patent. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950). Noting that Hemphill "failed to offer a single assertion illustrating that the difference between the elements of her invention and the accused devices is only insubstantial," the district court found that "no reasonable jury could find there to be equivalence between the elements of [Hemphill's] invention and the accused devices." *Hemphill,* 134 F.Supp.2d at 729. There are simply no genuine issues of material fact regarding infringement, either literally or under the doctrine of equivalents.

### III. *Motion for Reconsideration*

Hemphill also argues that the district court erroneously considered her Motion for Reconsideration as a Rule 59(e) Motion to Alter or Amend Judgment. We do not understand how the district court's treatment of her motion as a motion under Rule 59(e) could possibly constitute prejudicial error. Because the district court's decision to treat the motion as a Rule 59(e) motion did not prejudice Hemphill, we need not further address this issue, and we affirm the district court's dismissal of Hemphill's motion.

### CONCLUSION

Because the district court's claim construction was not legally erroneous, and its infringement analysis was proper, the district court's grant of summary judgment of noninfringement is

### *AFFIRMED.*