Allegra D. **HEMPHILL**

v.

**PROCTER & GAMBLE CO., et al.**

**No. CIV.A. DKC2002–3736.**

United States District Court,
D. Maryland.

April 15, 2003.

Kenneth R. Adamo, Jones Day, Cleveland, OH, William H. Baumgartner, Jr., Sidley Austin Brown and Wood, Chicago, IL, Russell E. Cass, Sidley Austin Brown and Wood, Chicago, IL, Blaney Harper, Jones Day, Washington, DC, Michael B. MacWilliams, George F. Pappas, Venable Baetjer and Howard LLP, Baltimore, MD, David M. Maiorana, Joseph D. Pollack, Jones Day, Cleveland, OH, Virgil Bryan Medlock, Jr., Sidley Austin Brown and Wood, Dallas, TX, James P. Ulwick, Kramon and Graham, Baltimore, MD, for Defendants.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution are the motions for summary judgment of noninfringement filed by Defendants Kimberly–Clark Corporation ("Kimberly–Clark") and The Procter & Gamble Co. ("Procter & Gamble"), as well as Defendants' counterclaims for declaratory judgments of noninfringement. The issues have been fully briefed, and no hearing is deemed necessary. Local Rule 105.6. For reasons that follow, the court shall grant Defendants' motions for summary judgment and dismiss the counterclaims without prejudice.

## I. Background

### A. Procedural History

This is the second lawsuit brought in this court by Plaintiff Allegra D. Hemphill against manufacturers of personal care products for alleged infringement of her U.S. Patent No. 4,557,720 (the " '720 patent"). In the first lawsuit, *Hemphill v. McNeil–PPC, Inc.* ("*Hemphill I*"), Plaintiff alleged that the defendant's STAYFREE and CAREFREE feminine sanitary napkins and SERENITY adult napkins products infringed claim 2 of her '720 patent. In that case, after ruling on the meaning of the claim terms and concluding that the accused products do not infringe claim 2 of the '720 patent, the court granted the defendant's motion for summary judgment. *See Hemphill v. McNeil–PPC, Inc.,* 134 F.Supp.2d 719 (D.Md.2001). The Court of Appeals for the Federal Circuit affirmed the decision on November 27, 2001 in an unpublished opinion. 25 Fed.Appx. 915 (Fed.Cir.2001).

In November 2002, Plaintiff filed the current action alleging infringement by Kimberly–Clark's KOTEX and POISE product lines and Procter & Gamble's ALWAYS and TAMPAX product lines ("the accused products").[1] Products bearing

---

1. Although TAMPAX is not expressly mentioned in the complaint, Plaintiff's opposition suggests that she regards TAMPAX as an accused product, and Procter & Gamble has included the product in its summary judgment motion. *See* Paper no. 32, at 29; Ex. C3. Accordingly, the court will include TAMPAX in this opinion. The court will not, how-

the KOTEX and ALWAYS brand names are feminine sanitary napkins, products bearing the KOTEX SECURITY and TAMPAX names are tampons, and those bearing the POISE brand name are adult napkins.[2] Defendants Kimberly–Clark and Procter & Gamble filed separate motions for summary judgment of noninfringement with regard to their accused products. Each Defendant has asserted a counterclaim for a declaratory judgment of noninfringement, but has said that it would consent to dismissal without prejudice of the counterclaim if its motion for summary judgment is granted.

## B. Background of the '720 Patent

Plaintiff filed her application for the '720 patent with the Patent and Trademark Office ("PTO") on June 11, 1984, and her patent was subsequently issued on December 10, 1985. *See* Paper no. 1, Ex. A. Bearing the title "Vaginal Applicator", the '720 patent describes a disposable vaginal swab or refresher meant either to cleanse or to treat the vaginal area with fragrances, medications, germicides, or deodorants. *Id.,* Ex. A, Col. 1, lines 33–38. The '720 patent has two independent claims, but only claim 1 is at issue in this litigation. The description contained in claim 1 of the Applicator is as follows:

1. A vaginal swab comprised of an outer housing having a closed and open end on opposing ends thereof, said housing including an annular band defining said open end and a plurality of frangible seams that together define a pair of removable members and a pair of housing segments hingably secured to said annular band following removal of said members, a swab core member having a predetermined exterior shape, said core member having an annular base with an outer diameter equal to the inner diameter of said annular band and an adsorbent member secured to said core member, said core member being secured within said housing so that said adsorbent member is enclosed therein.

*Id.,* Ex. A, Col. 6, line 1–Col. 7, line 5.

Claim 2, which was the claim at issue in *Hemphill I*, provides as follows:

2. a vaginal swab comprising an outer housing including an inner case member and an outer case member at least part of which is connected to and said overlies inner case member; a core member, at least one layer of porous material secured to said core member, and housing means for both supporting and enclosing said core member, said core member being secured to said housing means, having at least two portions movable relative to one another between first and second positions for enclosing said core member when in said first position and for both, exposing said core member and the said porous padding secured thereto and for forming a handle for said swab when in said second position.

*Id.,* Ex. A, Col. 7, line 6–Col. 8, line 10.

In addition to claiming a "vaginal swab," both claims require the "outer housing"

---

ever, rule on Procter & Gamble's summary judgment motion with respect to the ALLDAYS pantiliner product and the ENVIVE miniform product which are not mentioned anywhere by Plaintiff, but are included by Defendant "for the sake of completeness." The opinion will be limited to the allegedly infringing products actually before the court.

**2.** Plaintiff's complaint accuses Kimberly–Clark's KOTEX products of infringement, but does not make clear whether she is referring to KOTEX sanitary napkins, KOTEX SECURITY tampons, or both. Her opposition, while not a model of clarity, suggests that she is accusing both types of products. The court's infringement analysis will therefore include both KOTEX sanitary napkins and KOTEX SECURITY tampons.

and "core member" that were construed by the court in *Hemphill I*.[3]

### C. Accused Products

KOTEX sanitary napkins, ALWAYS sanitary napkins, and POISE adult napkins are sold in bags or boxes containing multiple napkins, which are individually wrapped in plastic. *See* Declaration of Herbert E. Grube, Paper no. 22, Ex. A1, ¶ 5 ("Grube Decl."); Declaration of Mary Jo Meyer, Paper no. 22, Ex. A2, ¶ 5 ("Meyer Decl."); Declaration of Thomas W. Osborn III, Paper no. 23, Ex. 2, ¶ 4 ("Osborn Decl."). The sanitary napkins are composed of an absorbent core material placed between a flexible liquid-pervious topsheet and a liquid-impervious plastic backsheet that has an adhesive on the outside for attaching the napkin to an undergarment. *See* Grube Decl. ¶ 6; Meyer Decl. ¶ 6; Osborn Decl. ¶¶ 4–5. The side of the plastic backsheet containing the adhesive has a thin paper sheet attached to it to protect the adhesive. *See* Grube Decl. ¶ 6; Meyer Decl. ¶ 7; Osborn Decl. ¶ 5.

In order to use the sanitary napkins, the consumer removes the plastic wrapper from the product, peels off the thin paper sheet, and affixes the adhesive side to the undergarment. *See* Grube Decl. ¶ 7; Meyer Decl. ¶ 8; Osborn Decl. ¶¶ 6,7. The napkins are intended to passively collect fluid during use. *See* Grube Decl. ¶ 9; Meyer Decl. ¶ 10; Osborn Decl. ¶ 7. The napkins are not designed to be used or placed internally into the vagina. *See* Grube Decl. ¶ 11; Meyer Decl. ¶ 12; Osborn Decl. ¶ 9. After use, the consumer removes the napkin from the undergarment and discards it, either directly or by first wrapping it in the plastic wrapper of the next napkin. *See* Grube Decl. ¶ 8; Meyer Decl. ¶ 9; Osborn Decl. ¶ 8.

KOTEX SECURITY tampons and TAMPAX tampons are also generally sold in bags or boxes containing multiple individually-wrapped tampons. *See* Grube Decl. ¶ 16; Osborn Decl. ¶ 21. Each tampon is composed of a piece of absorbent material made from cotton and/or rayon surrounded by a liquid-pervious overwrap. A string is attached to the bottom of the absorbent piece, which is compressed into a plastic applicator. *See* Grube Decl. ¶ 17; Osborn Decl. ¶ 20. To use the tampon, the customer removes the plastic wrapper, inserts the applicator into the vagina and expels the tampon from the applicator into the vagina by pressing the inner tube up into the outer tube. *See* Grube Decl. ¶¶ 18,19; Osborn Decl. ¶ 23. The applicator is then removed, leaving the tampon in the vagina to passively collect fluid. *See* Grube Decl. ¶ 19; Osborn Decl. ¶ 23. After use, the consumer removes the tampon by pulling on the string and then discards it either directly or by wrapping the used tampon in the plastic wrapper of the next tampon. *See* Grube Decl. ¶ 20; Osborn Decl. ¶ 23.

### II. Standard of Review

In patent cases, as well as in other cases, a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Alexander*, 85 F.3d 146, 150 (4th Cir.1996). The moving party bears the burden of showing that there is no genuine issue of material fact. Fed. R.Civ.P. 56(c); *Pulliam*, 810 F.2d at 1286

---

**3.** For a description of the prosecution history of the '720 patent and reexamination proceed- ings, see *Hemphill I*, 134 F.Supp.2d at 721– 23.

(citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998). A properly supported motion for summary judgment may not be defeated by "the mere existence of some alleged factual dispute between the parties." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505. Further, while the court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, the requirement of liberal construction does not mean that the court can assume the existence of a genuine issue of material fact where none exists. *Weller v. Dep't of Social Services*, 901 F.2d 387, 391 (4th Cir.1990); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir.1985).

 Although an infringement analysis usually involves both questions of fact and law, summary judgment of noninfringement may still be proper. *Nike, Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed.Cir.1994); *Chemical Eng'g Corp. v. Essef Indus. Inc.*, 795 F.2d 1565, 1571 (Fed.Cir.1986). A good faith dispute about the meaning and scope of asserted claims does not, in and of itself, create a genuine dispute to preclude summary judgment in patent cases. *Lantech, Inc. v. Keip Mach. Co.*, 32 F.3d 542, 546 (Fed.Cir. 1994).

### III. Analysis

 Plaintiff alleges that the accused products infringe on claim 1 of the '720 patent. In order to assess Defendants' motions for summary judgment of noninfringement, the court must engage in a two-step infringement analysis. "The first step is determining the meaning and the scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed.Cir.1995) (*en banc*), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). Claim construction is correctly a matter of law for the court to decide. *Id.* When construing a claim, a court should look to the intrinsic evidence, *i.e.*, the patent itself, its claims, written description, and the prosecution history. *See Vitronics Corp. v. Conceptronic, Inc.* 90 F.3d 1576, 1582 (Fed.Cir.1996). Additionally, statements made during the reissue [reexamination] proceeding "are relevant prosecution history when interpreting claims." *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1439 (Fed. Cir.1988). Prosecution history need not relate to the particular claim at issue in a case in order to be relevant, so long as the prosecution history in question relates to the same claim term as in the asserted claims. *See Alpex Computer Corp. v. Nintendo Co.*, 102 F.3d 1214, 1220 (Fed.Cir. 1996).

### A. Claim Construction

 In *Hemphill I*, the court construed the terms "vaginal swab," "outer housing," and "core member," and the Federal Circuit affirmed these constructions. Defendants argue that under the doctrine of collateral estoppel, or issue preclusion, the meaning of these terms as construed by the court in *Hemphill I* must apply in the instant case as well. There are four factors that must be met for collateral estoppel to apply: (1) the issue was identical to one decided in an earlier action; (2) the issue was actually litigated in the earlier action; (3) resolution of the issue was essential to a final judgment on the merits; and (4) the plaintiff had a full and fair opportunity to litigate the issue in

the earlier action. *See Molinaro v. Fannon/Courier Corp.,* 745 F.2d 651, 655 (Fed. Cir.1984); *A.B. Dick Co. v. Burroughs Corp.,* 713 F.2d 700, 703–04 (Fed.Cir.1983). The Federal Circuit has held that collateral estoppel applies to issues of claim construction. Specifically, " 'where a determination of the scope of the patent claims was made in a prior case, and the determination was essential to the judgment there on the issue of infringement, there is collateral estoppel in a later case on the scope of such claims.' " *Pfaff v. Wells Electronics, Inc.,* 5 F.3d 514, (Fed.Cir.1993), *quoting Molinaro,* 745 F.2d at 655.

 Plaintiff's opposition appears to focus solely on the first required factor for collateral estoppel. Plaintiff argues that collateral estoppel does not apply to claim construction in this suit because the first suit pertained to alleged infringement of claim 2, while this suit concerns claim 1. However, the claim terms construed in *Hemphill I* appear in both claim 1 and claim 2. It is well-settled law that unless the patent provides otherwise, a claim term cannot be given a different meaning in various claims of the same patent. *See Georgia–Pacific Corp. v. United States Gypsum Co.,* 195 F.3d 1322, 1331 (Fed.Cir. 1999); *Southwall Tech., Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1579 (Fed.Cir.1995). Plaintiff has not demonstrated that anything in the patent requires that terms be given a different construction in claim 1 than in claim 2. Thus, the issue in this suit, *i.e.,* the meaning of "vaginal swab," "outer housing," and "core member," is the same issue already decided in *Hemphill I.* Plaintiff's attempt to describe claim 1 as "structural" in order to distinguish it from claim 2 is unpersuasive, in part because claim 2 is also a structural claim (as opposed to a process or method claim).

Because the requirements for collateral estoppel have been met, the claim construction established in *Hemphill I* must be given collateral estoppel effect on claim construction in this case. Accordingly, Plaintiff is collaterally estopped from arguing, as she tries to do in her opposition motion, for a new construction of the claim terms "vaginal swab," "outer housing," and "core member."

In *Hemphill I* the court construed "vaginal swab" as "a small piece of absorbent material attached to the end of a stick or wire and used for cleansing or applying medicine," meant to be used within the vaginal canal.[4] *See Hemphill I,* 134 F.Supp.2d at 726–27, *citing American Heritage Dictionary* 1810 (3d ed.1992); *see also Dorland's Medical Dictionary* 1617 (28th ed.1994). The court construed the term "outer housing" as a device that serves as a handle structure for the use of the swab and is not designed to be removed and thrown away. *Id.* at 727. "Core member" was construed by the court as "a fairly rigid core member with an annular band or ring at its base that can fit into the band or ring of the outer housing." *Id.* These are the definitions against which the accused products must be compared to determine whether they infringe on claim 1 of the '720 patent.

**B. Comparison to Accused Products**

1. Literal Infringement

 A claim of literal infringement requires proof that the accused devices meet every limitation of the properly construed claims. *See Gentry Gallery, Inc. v. Berkline Corp.,* 134 F.3d 1473, 1476 (Fed.Cir. 1998). "If even one limitation is missing or not met as claimed, there is no literal infringement." *Mas–Hamilton Group v.*

---

**4.** The court expressly rejected the argument that Plaintiff again tries to make in this case that "vaginal" refers to the outer housing as the cover or sheath. 134 F.Supp.2d at 726.

*LaGard, Inc.,* 156 F.3d 1206, 1211 (Fed. Cir.1998). Defendants argue that because their products lack several limitations of claim 1, there can be no literal infringement as a matter of law.

### a. KOTEX, POISE and ALWAYS sanitary napkins

 Like the products in *Hemphill I,* the accused sanitary napkins in the current case do not function as "vaginal swabs" as required by the claims in the '720 patent. Plaintiff herself has stated that her vaginal swab does not resemble, behave, or function like a sanitary napkin. *See* Paper no. 22, Ex. D1 at PTO 00440. As discussed earlier, the sanitary napkins are intended to cover a portion of an undergarment to passively collect fluid. They do not consist of a piece of absorbent material attached to the end of a stick or wire and are not designed for internal vaginal use. Indeed, they are neither the size nor the shape that would allow for internal use.

Moreover, the structure of Plaintiff's invention differs greatly from the accused sanitary napkins. The sanitary napkins do not have an "outer housing" structure that is designed to be utilized as a handle for the use of a swab, as required by the '720 claims. The accused sanitary napkins merely have a plastic outer wrapping that is thrown away once the napkin is utilized. At most, the discarded wrapper covers the used and soon-to-be discarded napkin. The plastic wrapping is in no way equivalent to the handle function of the "outer housing" in Plaintiff's invention.

Additionally, the accused sanitary napkins lack a "fairly rigid" core member with an annular band or ring at its base that can fit into the band or ring of the outer housing. While the sanitary napkins do have an absorbent core, the core is soft and pliable, not "fairly rigid," and they do not have an annular band or ring that can fit into the band or ring of an outer housing. Given the absence of the foregoing elements from the accused sanitary napkins, Plaintiff has failed to establish that the accused products literally infringe upon her '720 patent.

### b. KOTEX SECURITY and TAMPAX tampons

 Similarly, Kimberly–Clark's KOTEX SECURITY tampons and Procter & Gamble's TAMPAX tampons do not literally infringe upon the '720 patent. Although they are intended for internal vaginal use, the accused tampons are not "swabs." They do not consist of a small piece of absorbent material attached to the end of a stick or wire; the string attached to the tampons only allows the user to remove the tampon, not to manipulate it. In addition, the tampons are designed to absorb menses, not to clean or apply medicine.

Furthermore, the accused tampons do not have an "outer housing" structure that is designed to be used as a handle for the swab, as required by the '720 claims. The tampon applicator does not transform into a handle after the tampon is inserted, but is instead designed to be completely removed and thrown away. Finally, the accused tampons lack a core member with an annular band or ring at the base that can fit into the band or ring of an outer housing. Because the accused tampons lack several elements, they, too, do not literally infringe on claim 1 of the '720 patent.

### 2. Doctrine of Equivalents

 Under the doctrine of equivalents, a product which does not literally infringe upon the express terms of a patent may nonetheless infringe if there is "equivalence" between the elements of the accused products and the claimed elements of the patent. *Zelinski v. Brunswick Corp.,* 185 F.3d 1311, 1316 (Fed.Cir.1999), *citing Warner–Jenkinson, Inc. v. Hilton*

*Davis Chem. Co.* 520 U.S. 17, 21, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). Infringement occurs under the doctrine of equivalents if the difference between the particular element and the claim limitation are "insubstantial." *Id.* A test to determine "insubstantiality" is whether "the element performs substantially the same function in substantially the same way to obtain substantially the same result as the claim limitation." *Id.*, at 1316–17, *citing Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950).

Plaintiff has not demonstrated that the differences between the elements in claims 1 or 2 of the '720 patent and the accused products are insubstantial. Each of the accused products lacks numerous structural limitations of the '720 patent and serves a different function. As mentioned earlier, Plaintiff herself noted during the prosecution and reexamination proceedings that her invention, a vaginal swab, does not look, behave or function like a sanitary napkin. *See, e.g.*, Paper no. 22, Ex. D1 at PTO 00440. Accordingly, the court finds that no reasonable jury could find there to be equivalence between the accused products and Plaintiff's invention.

## IV. Conclusion

Because there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law, the court shall grant Defendants' motions for summary judgment of noninfringement. Defendants' counterclaims for declaratory judgments of noninfringement will be dismissed without prejudice.